Hillsborough,
No. 4267.

GROVER C. GOVE

*v.*

R. WAYNE CROSBY, *Adm'r d. b. n., & a.*

Argued January 6, 1954.

Decided February 18, 1954.

*Willoughby A. Colby* (by brief and orally), for the plaintiff.

*R. Wayne Crosby* and *Wyman, Starr, Booth, Wadleigh & Langdell (Mr. Wadleigh* orally), for the defendant.

GOODNOW, J. The plaintiff's principal exception requires a determination of the meaning to be given to the words "living apart" as used in R. L., *c.* 359, *s.* 19, which reads as follows: "If, at the time of the death of either husband or wife, the decedent is justifiably living apart from the surviving husband or wife because such survivor was or had been guilty of conduct which constitutes cause for divorce, such guilty survivor shall not be entitled to any interest or portion in the real or personal estate of said decedent, except such as may be given to such survivor by the will of the deceased."

In recognizing that it was confronted with an interpretation of these words, the Trial Court ruled that "the holding of constructive abandonment in *Brown* v. *Brown*, 78 N. H. 337, construes the abandonment of the relation of husband and wife and not the abandonment of the *house* in which they were living as man and wife." While it was not specifically ruled as a matter of law that a wife could be found to be living apart from her husband only if she was living in a dwelling separate from that occupied by him, it seems apparent that this was the law applied in the Court's later finding that "at the time of her death, Bertha M. McNally was not living apart from the said Charles F. McNally as required under Chapter 359, sec. 19, of the Revised Laws of New Hampshire." The plaintiff excepted to this limited construction of the words "living apart."

By dictionary definition (see Webster's New International Dictionary, 2nd *ed.*), the word "apart" when used in the expression "living apart" may mean "a state of separation, as regards . . . place," but the more generally accepted sense in which it is used is to describe a condition of "isolation as regards action, function or associations" which might exist between a husband and wife while occupying the same dwelling. A husband and wife are usually thought of as living together when they cohabit together and participate with and aid each other to some extent in the ordinary acts and functions of home life. Their occupancy of the same dwelling is an essential element of the relationship. Living apart is the opposite of living together and exists when the husband and wife are each living independently and in isolation from the other. It is not necessary, however, that they occupy separate dwellings

in order to be living apart. No citation of authority is necessary to support the proposition that such a relationship can exist between a husband and wife even when they are both physically occupying the same dwelling. Unless there is something in the language of the statute or in its purpose that would require that they be occupying separate dwellings in order that one may be found to be living apart from the other, the usual meaning of the term should be adopted.

The language of the statute does not merely require that the parties be living apart but that the decedent be living apart from the survivor, thereby indicating the necessity for some voluntary and intentional act of separation on the part of the decedent. Nor does it simply provide that in addition to such living apart there must also have been a cause for divorce in existence against the survivor but the decedent is required to have been living apart because such a cause existed, again indicating that some decision on the part of the decedent is required. The result of the operation of this statute is admittedly drastic. It deprives a surviving husband or wife of all those rights in the estate of the deceased spouse which have long been recognized as important incidents of the marriage contract but in the definition of the two interdependent conditions which must exist at the time of death, the survivor's rights are adequately protected. Particularly in cases where both were occupying the same dwelling, in which proof that the decedent was living apart is made extremely difficult because of the normally private nature of the relationship that exists between husband and wife, is this protection emphasized. Those rights are barred only if "a cause of divorce against the surviving spouse has previously matured." *Baker* v. *Baker,* 90 N. H. 307, 308. If such a cause existed, an interpretation of the words "living apart" in this statute to require that the decedent, while living, remove to a separate dwelling would favor the offender at the expense of the injured spouse. It would permit the survivor, no matter how outrageous his or her conduct may have been, to successfully retain all rights in the decedent's property if the latter, without regard to any of the reasons for doing so, was occupying the same dwelling with the survivor at the time of death. We do not believe that this result was intended. A finding that the decedent was living apart from the survivor is not precluded by the fact that he or she was occupying the same dwelling with the survivor if all of the ordinary associations and connections with the survivor had

been terminated by the decedent and the latter was leading an independent existence. The Trial Court found that Mrs. McNally justifiably left her home on November 24, 1945, and began to live apart from her husband because he had been guilty of extreme cruelty to her. The evidence in the case is such that upon a new trial it may be found that this condition of living apart continued after her return to her home and until her death. The plaintiff's exception is sustained and there must be a new trial.

The defendant's exceptions concern the Court's finding that Mr. McNally had been guilty of conduct which constitutes cause for divorce. He first contends that there was no evidence that the beating which was received by Mrs. McNally on November 24, 1945, as evidenced by marks on her face, arms and body, was inflicted by her husband. While it is true that there was no direct evidence, the Trial Court's finding to that effect is not without support in the evidence and must be upheld. There was evidence that Mr. McNally had become very disagreeable in the last years before his wife's death, that he drank considerably and that Mrs. McNally had been observed in a frightened state of mind on more than one occasion within the year before the date of her death. About eight o'clock in the morning on the day in question, Mrs. McNally went to a neighbor's house, appeared to have suffered injuries immediately before that, was "all torn to pieces," scared, worked up and could hardly keep from crying. The neighbor observed the marks and bruises on her face and arms and these were also seen by others within the next several days. Mrs. McNally did not return to her home but was taken by her neighbor to the home of a relative and thereafter remained away for three weeks. During that period she brought an action for divorce against her husband. The Court's findings are amply supported by this evidence. The fact that some stranger may have assaulted her or that Mrs. McNally may have fallen and so injured herself, as urged by the defendant, are mere possibilities and totally inconsistent with her actions in remaining away from the home occupied by her husband and starting a divorce action against him. The defendant also asserts that even if administered by her husband, there is no evidence but that the beating Mrs. McNally received was merited or provoked. Considering the severity of the injuries she received, as evidenced by photographs, the fact that in the opinion of several witnesses, she had a good disposition, and the total absence of any evidence to indicate that

she did merit or provoke such an assault upon her, the obsolete standards applied to the conduct and duties of husband and wife in *Poor* v. *Poor*, 8 N. H. 307, relied on by the defendant, are inapplicable here. The defendant finally suggests that the husband's offense, if any, was condoned by his wife. Condonation was an affirmative defense available to the defendant. *Cf. Szulc* v. *Szulc*, 96 N. H. 190. In the absence of conclusive evidence that Mrs. McNally later forgave her husband for his mistreatment of her, the Court's implied finding that she did not do so was not error. The defendant's exceptions are overruled.

*New trial.*

DUNCAN, J., dissented: the others concurred.

DUNCAN, J., *dissenting*: Since the phrase "living apart" appears in section 33, chapter 339, Revised Laws, which had the same origin as section 19, chapter 359, Revised Laws, I think it improbable that the words were intended to be used in the sense attributed to them by the majority opinion (*Cf. Trow* v. *Trow*, 95 N. H. 529, 530; R. L., c. 7, ss. 1, 2), which would not distinguish them from the language of abandonment and refusal to cohabit (R. L., c. 339, s. 6 IX) the meaning of which had already been established by *Brown* v. *Brown*, 78 N. H. 337.